FRAKES,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES DIVISION et al,
*Respondents.*

(R2-2501-AN3532-7; CA A38678)

746 P2d 233

Marcia Ohlemiller, Legal Aid Service, Portland, argued the cause for petitioner. With her on the briefs was Michael H. Marcus, Legal Aid Service, Portland.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondents. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor

General, and Linda DeVries Grimms, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

■    Petitioner seeks review of a determination by the Adult and Family Services Division (AFSD) that she is liable for repayment of Aid to Dependent Children (ADC) of $10,147.70 for which she was ineligible. Petitioner does not dispute that she received unearned benefits. She argues, however, that the judgment against her should be offset by the amount of assistance she could have received under another ADC program for which she was eligible. We affirm.

Naimi Nemitullah is the father of petitioner's two children. Between September, 1983, and February, 1985, petitioner received ADC benefits based on the absence of the father from the home. Following a hearing, the referee found that petitioner had shared with the father "the custody, care and control" of the children during that period and thus had obtained public assistance improperly. Petitioner does not contest that portion of the referee's determination.

Since January, 1985, petitioner has been receiving public assistance under a second ADC grant, based on the father's inability to work. Petitioner's AFSD caseworker acknowledged at the hearing that Nemitullah was sufficiently incapacitated throughout September, 1983, to February, 1985, for petitioner to have qualified for an ADC grant. Petitioner contended before the hearings referee, and now on appeal, that she could have lived with Nemitullah beginning in September, 1983, and still have received a disability grant, had she been properly advised by AFSD. She argues, consequently, that the amount which she would have received from that type of grant should be offset against the overpayments.

Petitioner relies on a prior agency decision for the offset proposition. In his opinion on reconsideration, the referee determined that the prior decision was inapplicable:

"Counsel for Ms. Frakes cited the case of *Barbara Langan* as precedent for the principle that it is appropriate to offset an overpayment by another grant amount that a client would have been eligible for on some other basis or program. Langan is, however, distinguishable from the Frakes case. In Langan, Adult and Family Services should have been aware, because of her medical exemption from the old WIN Program and the current JOBS Program, that there was likely or at least possible eligibility for General Assistance. Her situation was that

she lived alone and it was an administrative error that failed to recognize that fact.

"In Frakes, even though part of the time she and Mr. Nemitullah lived together, Adult and Family Services was denied that information and, in fact, did not know that they lived together or even wanted to live together. That information was intentionally withheld."

Petitioner's first three assignments of error relate to the distinction that the referee drew between the Langan opinion and this case. She asserts that the referee's conclusions do not rationally relate to his findings of fact, that he applied the wrong legal standard and that the agency failed to follow applicable precedent. Those arguments overlook two relevant administrative rules, OAR 461-07-260 and 461-07-255.

Former OAR 461-07-260 provided that:

"An overpayment due to client error is one which results when:

"(1) The applicant/recipient makes misstatements orally or in writing to the Adult and Family Services Division regarding the receipt or possession of property, income and resources or other circumstances which affect directly eligibility for, or the amount of, assistance * * *."

Former OAR 461-07-255, defining overpayment due to administrative error, provided, in pertinent part:

"(1) An overpayment which results from an action specified in subsections (1)(a) through (d) of this rule is classified as an administrative error overpayment except when it is determined that the recipient knows or should know that the payment represents an overpaid amount as provided in rule 461-07-260:

"(a) AFS fails to reduce, suspend or terminate assistance upon receipt of information which forms the basis for such action; or

"(b) AFS fails to use the correct standard of assistance; or

"(c) AFS fails to compute or process a payment correctly; or

"(d) AFS fails to require an applicant/recipient of General Assistance who has applied for SSI to complete an Interim Assistance Agreement."

Overpayments due to client error are recoverable by the state. OAR 461-07-270(1).

Those rules create a distinction between overpayments made as a result of "client error" and those due to "administrative error." Although the referee did not cite either of them, the portion of the reconsideration opinion quoted above clearly invokes the principle that offsets cannot be allowed if the overpayments were not the result of "administrative error." In the present case, the overpayments were made as a result of petitioner's attempt to deceive the division about the father's status. The referee's decision not to allow an offset is a reasoned exception to the Langan opinion and follows logically from the application of the principles expressed in former OAR 461-07-260 and 461-07-255. The agency followed its rules in denying an offset.

■ In her fourth assignment, petitioner urges that the hearings officer failed to make adequate findings regarding the agency's duty to explain fully to petitioner her rights as a public support recipient and the eligibility requirements for applicable programs. *See* OAR 461-03-060 and 461-03-061. Petitioner asserts that both she and the father asked AFSD employes whether they could receive benefits while living together and were told they could not. The referee rejected that contention on the basis of a credibility finding. In his factual findings the referee determined:

> "Ms. Frakes and Mr. Nemitullah were not credible witnesses in regard to their testimony about asking about potential eligibility for a couple living together."

The hearings officer elaborated further on the significance of the finding in explaining his decision:

> "Both she and Mr. Nemitullah testified that he had asked Adult and Family Services about potential eligibility for a couple living together. He did not know whom he asked. Ms. Walker testified that she had never been asked that question. She never assumed that they were living together, and, therefore, would not have suggested that possibility. It is somewhat important in the resolution of this particular issue to point out that Ms. Frakes and Mr. Nemitullah both testified that they intentionally withheld information from Adult and Family Services about living together from June 1984 to the present. It is evident, therefore, that they have been willing to withhold information or provide false information when they

feel it's necessary to gain benefits. In view of this intentional omission, their vague recollection as to whom they spoke, and Ms. Walker's testimony on this point, the hearing officer found their testimony to be contrived and unbelievable. This fact weighed heavily with the hearing officer in his decision that there is not sufficient evidence to conclude that they were given improper information."

The referee made adequate findings regarding whether petitioner was informed about all public support programs for which she might be eligible. Although agency personnel have an affirmative duty to provide understandable and correct explanations about program eligibility, it would be unreasonable to require them to furnish information about programs which are patently inappropriate or unavailable on the basis of what the client has told them. The record in this case supports the agency's determination that the overpayments were the result of petitioner's intentionally withholding information.

Petitioner's other arguments do not merit discussion.

Affirmed.